UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD S HODGES, III, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-2207 |
| | § | |
| R. TRINCI, *et al*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Petitioner Edward S. Hodges, III's Petition for Writ of

Habeas Corpus, and Respondent William Stephens' Motion for Summary Judgment.  Having

carefully considered the Petition, the Summary Judgment Motion, and the arguments and

authorities submitted by the parties, the Court is of the opinion that Respondent's Motion for

Summary Judgment should be GRANTED, and Hodges' Petition for Writ of Habeas Corpus

should be DENIED.

I.      Background

Hodges was convicted in the 272nd Judicial District Court of Brazos County, Texas of

aggravated rape.  He was sentenced to 60 years imprisonment.  SH3a. at 2.[1]

Hodges was eventually paroled.  His parole was revoked on June 16, 2011.  Hodges filed

a state habeas corpus application challenging the parole revocation.   The Texas Court of

Criminal Appeals denied the application without written order.  SH12a at cover. Hodges filed

this federal petition for a writ of habeas corpus challenging the parole revocation and respondent

moved for summary judgment.

II.  The Applicable Legal Standards

---

[1]      "SH." refers to the transcript of Hodges' state habeas corpus proceeding.

A.       The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the

Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320,

335-36 (1997).   Under the AEDPA, federal habeas relief based upon claims that were

adjudicated on the merits by the state courts cannot be granted unless the state court's decision

(1) "was contrary to, or involved an unreasonable application of, clearly established federal law,

as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).  For questions of law

or mixed questions of law and fact adjudicated on the merits in state court, this court may grant

relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved

an unreasonable application of, clearly established [Supreme Court precedent]."  *See Martin v.*

*Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  Under the "contrary to"

clause, this court may afford habeas relief only if "'the state court arrives at a conclusion

opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court

decides a case differently than . . . [the Supreme Court] has on a set of materially

indistinguishable facts.'"  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert.*

*denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court

decision "identifies the correct governing legal rule from [the Supreme Court] cases but

unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply."  *Williams*, 529 U.S. at 406.  "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts."  *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999).  A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."  *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd,* 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003).  The sole inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'"  *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

        B.        The Standard for Summary Judgment in Habeas Corpus Cases

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000).  In ordinary civil cases a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Where, however, a state prisoner's factual allegations have been resolved against him by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981).  In reviewing factual determinations of the Texas state courts, this court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

III.     Analysis

Hodges' petition raises eight claims for relief:  1) he was denied assistance of counsel; 2) the parole board used charges of which Hodges was acquitted as a basis for revoking his parole; 3) he was denied due process as a result of delay before his hearing; 4) he was denied due process because the hearing officer was biased against him; 5) he was denied due process because he received inadequate notice of one of the parole violations; 6) his parole officer testified falsely and introduced false evidence; 7) the State added a parole violation for Hodges refusing DNA testing when Hodges did not so refuse; and 8) he is being subjected to cruel and unusual punishment.  These claims are addressed in turn.

A.     Parole Revocation

We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights

> due a defendant in such a proceeding does not apply to parole
> revocations. *Cf. Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19
> L.Ed.2d 336 (1967). Parole arises after the end of the criminal
> prosecution, including imposition of sentence. Supervision is not
> directly by the court but by an administrative agency, which is
> sometimes an arm of the court and sometimes of the executive.
> Revocation deprives an individual, not of the absolute liberty to
> which every citizen is entitled, but only of the conditional liberty
> properly dependent on observance of special parole restrictions.

*Morrissey v. Brewer,* 408 U.S. 471, 480 (1972).  A parolee, however, is entitled to due process

during the course of revocation proceedings.  *Id.* at 481-82.  "What is needed is an informal

hearing structured to assure that the finding of a parole violation will be based on verified facts

and that the exercise of discretion will be informed by an accurate knowledge of the parolee's

behavior."  *Id.* at 484.

      B.     Right to Counsel

Hodges requested counsel to represent him in the revocation hearing.  The request was

denied.  He asserts that counsel was necessary because he was incarcerated after his arrest and

lacked access to legal materials, witnesses, and evidence.

There is no absolute right to counsel in a parole revocation.  *See Gagnon v. Scarpelli*, 411

U.S. 778, 790 (1973).  The decision whether to appoint counsel "must be made on a case-by-case

basis in the exercise of a sound discretion by the state authority charged with responsibility for

administering the probation and parole system."  *Id.*

Respondent argues that the record does not reflect a request for counsel, Hodges' current

claim notwithstanding.  Respondent also notes that the preliminary hearing officer and the final

revocation hearing officer stated that Hodges did not qualify for state appointed counsel because

he had no pending criminal charges, he understood the issues and was capable of speaking for

himself, the issues were not complex, and he was not using any psychotropic medications.

SH12c at 55, 68.  While Hodges points to a number of things that counsel might have been more able to do than was Hodges, he points to nothing unusually complicated about any of these things.

Under *Gagnon,* the decision whether to appoint counsel rests in the discretion of the parole board.  Hodges fails to demonstrate that the board abused that discretion, or that the state habeas court was unreasonable in rejecting this claim.  He is not entitled to relief on this claim.

C.      Consideration of Violations

Hodges next alleges that the revocation violates double jeopardy because the board considered two alleged parole violations, criminal mischief and fleeing from a police officer, for which Hodges was acquitted in a criminal trial.  As the Fifth Circuit has explained, the constitutional prohibition on double jeopardy does not bar a parole board from considering conduct for which a parolee has been acquitted in a criminal trial.  This is because the burden of proof in a criminal trial and a parole revocation hearing are different.  A criminal acquittal does not necessarily mean that the defendant did not commit the acts alleged; it means simply that the factfinder concluded that the prosecution failed to prove guilt beyond a reasonable doubt.  The burden of proof in a parole revocation proceeding is "considerably less."  *Villareal v. United States Parole Comm'n*, 985 F.2d 835, 839 (5th Cir. 1993).  Because double jeopardy is inapplicable in this context, Hodges fails to demonstrate a constitutional violation.

D.      Delay In Preliminary Hearing

Hodges next contends that a delay in his preliminary hearing rendered the proceeding unfair because it hindered his ability to present his case.  Under *Morrissey*, a preliminary hearing is required to determine whether there is probable cause to believe that the parolee has violated the conditions of his parole.  The hearing must take place reasonably soon after the arrest, and

provide minimal due process and a limited right to confront adverse witnesses. *Morrissey*, 408

U.S. at 485-87.  In the case of a delayed hearing, however, the petitioner must show some actual

prejudice caused by the delay. *Villareal*, 985 F.2d at 839.

The record shows that Hodges testified at his preliminary hearing, and lodged objections

to the accuracy of two of the State's exhibits. *See* Docket Entry 1-1 at 19-20.  Moreover, Hodges

had another opportunity to challenge the evidence against him following the probable cause

determination, at the final revocation hearing.   At that hearing, Hodges presented several

witnesses.  He is currently incarcerated as a result of the final revocation hearing.  As discussed

*infra*, the evidence presented at that hearing was sufficient to support the revocation.   The

preliminary hearing, flawed or not, thus "no longer has any relation to his incarceration," *Collins

v. Turner*, 599 F.2d 657 (5th Cir. 1979), and provides no basis for habeas corpus relief.

E.       Biased Hearing Officer

Hodges next claims that the preliminary hearing officer was biased against him.  Hodges

raised a challenge to the neutrality of the hearing officer on the grounds that he was involved in a

past transmittal of the imposition of a special condition on Hodges.   Based on this, Hodges

contended that the officer had prior knowledge of Hodges' case.

The officer explained that it was part of his duty as Supervisor of the Conroe Parole

Office to present transmittals submitted by the Bryan, Conroe, and Huntsville offices.  He stated

that he did not review transmittals unless they were submitted by his office, that he had no prior

knowledge of Hodges' case, and that he would be fair and impartial.  SH12c at 67-68.

Actual bias by the hearing officer would raise significant due process concerns.  Hodges,

however, fails to present any evidence that the officer's involvement in the prior transmittal was

anything other than ministerial, or that the officer had any prior knowledge of Hodges' case.

Moreover, in rejecting Hodges' state habeas corpus application, the Texas Court of Criminal Appeals implicitly found that Hodges failed to show a due process violation. Based on the record, that finding is reasonable, and it is entitled to deference under the AEDPA. Hodges' claim of bias is largely conclusory, and does not merit relief.

F.     Notice

One of the charge violations was Rule M, which requires parolees to submit a DNA sample. Hodges alleges that he received inadequate notice of this charge.

The record contains an April 13, 2011, acknowledgment by Hodges that he received notice of the violations. Resp. Exh. A. The preliminary hearing occurred on April 15, 2011, and the final revocation hearing on June 2, 2011. SH12c at 53, 64.

Due process clearly requires written notice to a parolee of alleged parole violations. *See Morrissey*, 408 U.S. at 488-89. In this case, Hodges apparently received only two days notice of the Rule M violation before his preliminary hearing.

As discussed above, however, the purpose of the preliminary hearing is merely to determine whether there is probable cause to pursue revocation. Hodges' parole was not revoked as a result of the preliminary hearing; it was revoked as a result of the final revocation hearing. The final revocation hearing occurred on June 2, 2011, more than a month and a half after Hodges acknowledged receiving notice of the Rule M violation. The record thus shows that Hodges had sufficient notice of the violation.

G.     Use of False Evidence

Hodges next contends that his parole officer presented false testimony and evidence, and that the Rule M violation was erroneously added because he did not refuse to submit a DNA sample. Respondent characterizes this as a challenge to the sufficiency of the evidence.

To the extent that Hodges alleges that he was denied due process by the use of false evidence, the Fifth Circuit has explained, in the more protective context of a criminal trial, that

> [t]o establish a due process violation based on the State's knowing use of false or misleading evidence, [a habeas petitioner] must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Evidence is false if, *inter alia,* it is specific misleading evidence important to the prosecution's case in chief. False evidence is material only if there is any reasonable likelihood that [it] could have affected the jury's verdict.

*Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997) (internal citations and quotation marks omitted, third alteration in original), *cert. denied*, 523 U.S. 1139 (1998). As discussed below, there was sufficient evidence independent of the allegedly false evidence to support the revocation.

In a parole revocation hearing, due process requires only that the revocation decision be supported by "some evidence." *Villareal*, 985 F.2d at 839. Police Officer Christopher Albarado testified that he pulled his vehicle directly behind Hodges' car. Hodges did not stop his vehicle when Albarado activated his overhead lights, or when he activated the siren. SH12c at 59. This is "some evidence" supporting the finding that Hodges fled from a police officer.

Lisa Goocher, an administrative technician for the Texas Department of Criminal Justice described Hodges' refusal to provide a DNA sample. Parole officer Nikki Marchant testified that she instructed Hodges to provide a DNA sample. *Id.* at 59-60. This supports the finding that Hodges violated Rule M by refusing to provide a DNA sample when requested to do so.

Because there is some evidence showing that Hodges violated the conditions of his parole, the evidence is sufficient to support the revocation. Moreover, because there was sufficient evidence independent of any allegedly false evidence, the allegedly false evidence is not material, and its alleged falsity does not establish a denial of due process.

H.       Cruel and Unusual Punishment

In his final claim, Hodges contends that his continued imprisonment constitutes cruel and unusual punishment.  He does not dispute the validity of his conviction.  As discussed above, he fails to demonstrate that the revocation of his parole was unconstitutional.  He thus states no basis for concluding that his continued incarceration violates the Eighth Amendment.

IV.    Conclusion

For the foregoing reasons, Hodges fails to raise a viable claim for habeas relief.  His claims must be dismissed with prejudice for the reasons stated in this opinion.

V.     Certificate of Appealability

Hodges has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny COA *sua sponte*.  The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.")  A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request.  *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").  "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone."  *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429,

431 (5th Cir. 1998).  A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further."  *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).

This Court has carefully considered each of Hodges' claims.  The Court finds that each of the claims is foreclosed by clear, binding precedent.  This Court concludes that under such precedents, Hodges has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This Court concludes that Hodges is not entitled to a certificate of appealability on his claims.

VI.   Order

For the foregoing reasons, it is ORDERED as follows:

A.   Respondent William Stephens' Motion for Summary Judgment (Doc. # 28) is GRANTED;

B.   Petitioner Edward S. Hodges, III's Petition for Writ of Habeas Corpus (Doc. # 1) is in all respects DENIED; and

C.   No certificate of appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this Memorandum and Order.

SIGNED on this 13th day of December, 2013.

_____

Kenneth M. Hoyt
United States District Judge